## UNITED STATES v. 24 LIVE SILVER BLACK FOXES et al.

(District Court, W. D. Washington, N. D. October 4, 1924.)

No. 8686.

**Customs duties ⬤◁◁15—Fox pups, born after entry of mothers, held not subject to duty as "live animals."**

Fox pups, born more than 52 days after importation of their mothers, and while the latter were in custody of the customs authorities after seizure for fraudulent entry, *held* not subject to duty or forfeiture. under Tariff Act 1922, § 1, Schedule 7. par. 715 (Comp. St. Ann. Supp. 1923, § 5841a), as "live animals" at time of entry.

[Ed. Note.—For other definitions, see Words and Phrases, Live Animals.]

Libel by the United States against 24 live silver black foxes and 20 live silver black fox pups; George A. Todd and others, claimants. On petition for order directing summary sale and exceptions to libel. Petition denied, and exceptions sustained in part.

Donald G. Graham, Asst. U. S. Atty., of Seattle, Wash., for libelant.

Scott Z. Henderson, of Tacoma, Wash., for claimants.

NETERER, District Judge. On the 17th of December, 1923, 24 live silver black foxes were imported into the United States, and it is alleged were declared under a fraudulent invoice and value; that on the 4th of March, 1924, the foxes, while in the jurisdiction of this court, were seized by the customs agent in charge at Seattle; that subsequent to seizure and while the said foxes were in the custody of the collector of customs there were born to the vixens 20 whelps or pups, which have also been seized; that on the 17th day of July, 1924, the foxes and pups were levied upon by the United States marshal, and not having facilities to care for the whelps, and liability to waste and deterioration and hazard in keeping, a petition is filed, praying an order directing the summary sale of the silver black foxes and whelps, or in the alternative, that the plaintiff spend a sum not to exceed $850, necessary for their care and custody.

I do not think that an order of summary sale should be made. Upon the record it does not appear that there is danger of waste or deterioration in the value of the foxes, and I indulged the hope that this libel may be speedily determined so far as this court is concerned.

As to the whelps, I do not know that there is a parallel in the books. Paragraph 715 of section 1 of the Tariff Act of 1922 (section 5841a, Comp. St. Ann. Supp. 1923), provides that "on and after the day following the passage of this act * * * there shall be levied, collected, and paid * * * the rates of duty, * * * namely, paragraph 715: Live animals, * * * 15 percentum ad valorem. * * *"

What is a live animal? Unless these whelps bore some relation to life at the time of the entry of the vixens, I cannot conceive how they would come within the provisions of this section. Can we by analogy of the status of man determine the status of the whelps or pups? Life is said to be a state in which energy of function is ever resisting decay and dissolution, and commences for many legal purposes at the period of quickening. 1 Bla. 129. Physiology defines life as existing from the period of conception. Dean, Med. Jur. 129. For many purposes the law concedes to physiology the fact that life commences at conception, en ventre sa mere (1 Bla. 130), and is life for all beneficial purposes (1 P. Wms. 329), but to create a civil right status a child must be

born. The circulating system must be changed and the child must have an independent circulation. Tayl. Med. Jur. 591. The umbilical cord, however, need not be severed. See Beck, Med. Jur. 478; 1 Chit. Med. Jur. 438.

A civil right is a privilege accorded to an individual, a right due from one to another and the trespassing upon which may be redressed by a civil action. State v. Chic., B. & O. R. Co. (C. C.) 37 F. 497. It also may be said to be a right of action on account of a live animal. To assess the tax or duty against live animals (section 5841a, supra) is a civil liability which attaches to the animals. In order that the civil liability may attach to the whelps they must at the time of the entry of the vixens have some relation to life. The whelps were born after the vixens were seized on the 4th of March, 1924. Being entered December 17, 1923, the vixens could not have been mated at that time, since the gestation period is 51 or 52 days. U. S. Dept. of Agriculture Bul. No. 1151, p. 36. The forfeiture dating from the date of entry, the whelps had no relation to life at the time the vixens were entered. From any viewpoint of approach, it is apparent that the whelps, at the time of entry of the vixens, could not have had the status of live animals, and cannot be held to be within the provisions of section 592, Tariff Act.

The exceptions to the libel will be sustained, so far as the whelps are concerned. The other exceptions are denied, and summary sale is denied.